GUIDRY, Judge.
Plaintiff, Crowley Associates (hereafter Crowley), appeals the trial court judgment which dismissed its suit for money allegedly due under the terms of its lease with the G.C. Murphy Company (hereafter Murphy). We affirm.
FACTS
The Crowley Village Shopping Center was completed by The Mitchell Company in early 1979. Prior thereto, on February 8, 1978, Mitchell leased 48,020 square feet of the shopping center to Murphy. The leased premises included a common area for parking and delivery drives constructed by Aton Construction Company, Inc., a subcontractor, at a cost of $254,059.59.
In the early 1980s Mitchell sold the shopping center to Crowley, but remained as manager. In 1984, Murphy complained to the lessor about the condition of the parking lot and rear delivery areas, i.e., pot holes, cracks, depressions etc.
Article 9 of the lease agreement obligated the lessor (plaintiff herein) to make all necessary repairs, etc. to the parking lot and other common areas so as to maintain them in serviceable condition.
Article 37 of the lease agreement provides that lessee (defendant herein) is responsible for contributing “its pro rata share of the cost of maintaining the common areas of the Shopping Center”, (emphasis ours).
Mitchell, on behalf of Crowley, contracted with Louis J. Capozzoli and Associates, Inc. and Barber Brothers Construction Company to repair the parking lot and rear delivery areas of the shopping center. In September of 1984, the parking lot and rear delivery areas were redone at a cost of $140,502.57. Plaintiff assessed G.C. Murphy Company with their pro rata share of the cost, i.e., $70,377.71. Defendant refused to pay and this suit followed.
Following a trial on the merits, the trial court dismissed plaintiffs demand against Murphy finding that the parking lot and rear delivery areas were defective at the time the lease was made “if not in original design, then in the actual construction”. La.C.C. art. 2695. Plaintiff appeals from that judgment.
On appeal, plaintiff urges trial error in the following particulars:
1. The trial court erred when it determined that the repair work completed on the parking lot and rear drive areas in 1984 was not covered by the provisions of the lease agreement.
2. The trial court erred when it found that the parking lot and rear drive areas were defective within the intendment of La.C.C. art. 2695.
We have carefully reviewed the record and finding no clear error in the trial court’s conclusions, we affirm. The trial court disposed of the issues for review in the following excellent written reasons for judgment, which we are pleased to adopt as our own:
“This is a suit to collect money allegedly due under the terms of a commercial lease executed on February 8, 1978 between Mitchell Company and G.C. Murphy Company (Murphy). Crowley Associates (Crowley) is the successor company of Mitchell. Murphy leased space in the Crowley Village Shopping Center in Crowley, Louisiana. Crowley is seeking to collect from Murphy a pro-rata share of the cost of certain work done on the parking lot for the shopping center. There seems to be no dispute that Murphy’s share would be $70,377.71 of the total cost of $140,502.57 for the project. The parties feel that it is an all *1270 or nothing situation, with no middle-ground alternatives. Murphy has paid its pro-rata share of other maintenance expenses for the parking lot for the year in question, but contests solely the charges for the particular project at issue.
The lease agreement was entered into by the parties prior to the construction and/or completion of the shopping center. Construction was begun in the latter part of 1978. Several changes were made in the choice of construction contractor during the early stages of the project. The evidence indicates that the final specifications for the parking lot called for a Vk inch thick layer of asphalt over 6 inches of soil cement in most of the front parking area, and Vk inches of asphalt over 8 inches of soil cement in the rear of the stores in the area of heavy truck traffic, along the drive immediately in front of the stores, and at several of the side driveways. This final specification was never put down on paper in diagram form.
In mid-1984 the deterioration of the condition of the parking lot was so extensive that Dr. Louis Capozzoli, a civil engineer, was hired to investigate the cause of the problem. His report dated July 81, 1984 indicates that the damage was worst in the rear delivery area and in the front main traffic lane nearest the stores. The map of the lot and the repairs done which was introduced displays the additional isolated areas of repair throughout the lot.
Capozzoli was hired by plaintiffs [sic] to supervise the work. The damaged areas were dug up and filled with a full depth asphalt patch, and the rear delivery area was overlaid with an additional Vk inches of asphalt to add strength. It was a management decision to make a full repair that would last in the long-run, rather than continue to make small short-term patches that would not last. The project took roughly two weeks to complete.
Plaintiff seeks the pro-rata cost of the expenses based upon Articles 9 and 37 of the lease. Article 9 provides in part:
‘Further, Landlord ... shall make all necessary repairs and replacements to the parking lots and other common areas so as to properly maintain and keep such areas in good, serviceable, useful condition throughout the term.’
Article 37, part of an addendum to the lease, provides in part:
‘Landlord shall maintain the common areas of the Shopping Center in accordance with the provisions of Article 9 of the Lease Agreement. Tenant shall contribute its pro rata share of the cost of maintaining the common areas of the Shopping Center.’
The issue is whether the work done is covered by these provisions of the lease. The Court holds that it is not. Due to the extensive nature of the repairs required and the total cost involved, this goes beyond what is normally considered as ‘necessary repairs and replacements’ under these circumstances. If extensive repairs were required after the normal useful life of the parking lot in the middle of this twenty-year lease, it would reasonably be considered to be necessary at that time. However, work of this magnitude done within five years of the initial construction of the lot can not reasonably be considered to be covered by the lease. Although the terms of the lease themselves are unambiguous, the circumstances of the work undertaken here is nevertheless not covered. Testimony from the experts indicates that the normal useful life of this type of asphalt parking lot should be 10-12 years on the average. Then a general overlay of the entire surface would be expected, with very little repair to the base itself. In this case, 19% of the total parking area was repaired within only five years at a cost of roughly $140,000.00. The contract for the original construction shows a cost of $254,059.59 for the site work, with $192,709.69 of that price specificed [sic] particularly for the soil cement and asphalt overlay. Roughly 26% of the repairs done dealt with the soil cement base, and approximately 74% was primarily to the asphalt surface itself with little *1271 or no base intrusion. With the cost of repair in comparison to the original cost, this work went beyond ‘maintaining’ as it is commonly and ordinarily used. It rises more to the level of a capital improvement, and as such should not be borne by the lessee.
Furthermore, it is evident that the problems with the parking lot arise from vices and defects in the original construction. Defendant centered its argument primarily on the fact that the parking lot was built according to the intended design, and that such a design was commonly used in the industry at the time. However, even assuming that it was constructed as designed, the end result was a defective parking lot which lasted approximately half of its expected useful life.
Dr. Capozzoli, the engineer hired by Crowley to supervise the repairs, was called by Murphy as part of the defense in chief. He was actually present on the repair site and has more personal knowledge of the condition of the parking lot than any of the other expert witnesses. He testified that the pavement simply was not constructed thickly enough to support the maximum loads in the rear of the store and the stress in the highly trafficked areas. Also there was a lack of patterning of traffic across the parking lot which allows more random travel and stress. His opinion was that there were original design defects. His boring samples indicate to him that the soil cement in the rear of the stores was not 8 inches thick as designed on the average. Even if it were poured correctly this would still be inadequate in strength. Dr. Capozzoli’s testimony is to be given great weight due to his greater experience with parking lot construction, and because he was chosen by Crowley to investigate the problem and remedy it. He would not have been hired had he not been considered properly qualified.
Jim Evans, Crowley’s rebuttal expert, is a construction engineer who designed only 5 or 6 parking lots 25-30 years ago. Although he testified that the design used was acceptable in 1979, it is no longer accepted today and he would use higher specifications to reduce maintenance. He has never had a parking lot he was involved with have this many problems. As he pointed out, the quality put into the original construction is an economic question weighted against future maintenance. Also, he has no personal knowledge of this project, but merely reviewed the documents.
Paul Letz, another rebuttal expert, is a civil engineer who has worked in the Crowley area for forty years. He testified that most of the streets in Crowley are built to a similar specification as the lot, it was commonly used, and he would have recommended it. However, he added that he knows from personal knowledge that this particular parking lot was in terrible shape and that something caused it to fail prematurely.
The Court concludes that this parking lot was defective, if not in its original design, then in the actual construction. This supports the holding that even under the terms of the lease, this work was not a regular part of ‘maintaining’ the lot. The lessee should not bear the cost of repairing an original construction defect. La.C.C. Art. 2695 requires the lessor to guarantee the lessee against all the vices and defects of the thing. Although the damage did not prevent the use of the parking lot as a whole, 19% of the total area is substantial enough to interfere with its normal and convenient use.
Accordingly, it is held that plaintiff is not entitled to collect for these repairs under the lease agreement due to the magnitude of the work and the original defect in the parking lot. Judgment is rendered in favor of Murphy, dismissing plaintiff’s demand with prejudice at its cost.”
For these reasons, the judgment of the trial court is affirmed. Appellant is cast with all costs of this appeal.
AFFIRMED.